O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| **JOSE RAMIRO ARREDONDO** | § | |
|     *Petitioner*, | § | |
| VS. | § | **CIVIL ACTION NO. 5:08-cv-126** |
| | § | **CRIMINAL ACTION NO. 5:07-cr-523** |
| | § | |
| **UNITED STATES OF AMERICA** | § | |
|     *Defendant*. | § | |

## OPINION & ORDER

Pending before the Court is *pro se* litigant Jose Ramiro Arredondo's ("Arredondo") Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody under 28 U.S.C. §2255, [Dkt. No. 1],[1] which the Court deems filed on September 22, 2008.[2] The Court concludes that it is not necessary to order the Government to respond because "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." 28 U.S.C. § 2255, Proc. R. 4(b); *see also United States v. Santora*, 711 F.2d 41, 42 (5th Cir. 1983). Having duly considered the petition, supporting memorandum, and applicable law, Arredondo's petition is **DENIED**.

### I.     JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §2255. Arredondo's motion is timely because it was filed within one year of the date on which his judgment of conviction became final. *See* 28 U.S.C. § 2255(f)(1) (2006).

---

[1] "Dkt. No." refers to the docket number entry for the Court's electronic filing system. The Court will cite to the docket number entries rather than the title of each filing. "Dkt. No." will be used to refer to filings in case number 5:08-cv-126. Unless otherwise noted, "Cr. Dkt. No." will be used to refer to filings in criminal case number 5:07-cr-523-1. Citations to "Minute Entries" will be used to refer to entries made for criminal case number 5:07-cr-523-1.

[2] Although the Clerk received Arredondo's motion on September 24, 2008, it is dated September 22, 2008. Thus, September 22, 2008 is the earliest date it could have been delivered to prison authorities for filing, the pertinent date for deeming a document filed by a *pro se* prisoner under *Houston v. Lack*, 487 U.S. 266, 276 (1988). *See United States v. Patterson,* 211 F.3d 927, 929-30 (5th Cir. 2000); *United States v. Young*, 966 F.2d 164, 165 (5th Cir. 1992). The Court deems the petition filed as of the earlier date.

## II.  FACTS AND PROCEEDINGS

### A.  The Underlying Conviction

On April 10, 2007, a federal grand jury in Laredo, Texas returned a five-count indictment against Arredondo of conspiracy to bring in undocumented aliens for financial gain, specific acts of bringing in undocumented aliens for financial gain, and bribery of a public official. [Cr. Dkt. No. 23]. The indictment stated that Arredondo, a Customs and Border Protection (CBP) Officer stationed at the Gateway to the Americas International Bridge Port of Entry #1 in Laredo, Texas, permitted aliens to enter the United States without proper inspection. [*Id.*]. Arredondo decided to forego trial and entered a plea of guilty before United States Magistrate Judge Adriana Arce-Flores as to Count Two of the indictment. [Minute Entry of 5/17/2007]. Count Two of the indictment specifically charged Arredondo with bringing an alien to the United States for the purpose of commercial advantage and private financial gain in violation of Title 8, United States Code, Section 1324(a)(2)(B)(ii) and Title 18, United States Code, Section 2. [Cr. Dkt. No. 23]. The Court accepted his plea. [Cr. Dkt. No. 60].

Arredondo's plea agreement with the United States explicitly states that the minimum penalty is three years and the maximum penalty is ten years for a violation of 8 U.S.C. § 1324(a)(2)(B)(ii). [Cr. Dkt. No. 55 at ¶ 3]. The agreement later addresses the Court's discretion in imposing a sentence. It contains the following language:

> 8.  The defendant is aware that the defendant's sentence may be imposed in accordance with the <u>Sentencing Guidelines and Policy Statements</u>. The defendant nonetheless acknowledges and agrees that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for the offense(s) to which the defendant pleads guilty . . . .
> 9.  The defendant is aware that a sentence has not yet been determined by the Court. The defendant is also aware that any estimate of the probable sentencing range under the sentencing guidelines that the defendant may have received from the defendant's counsel, the United States or the Probation Office, is a prediction, not a promise, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation

>concerning what sentence the defendant will receive. The ultimate sentencing determination including whether the defendant has accepted responsibility is left to the discretion of the Court.

[*Id.* at ¶ 8-9]. The plea agreement then continues on to address Arredondo's waiver of his right to appeal either directly or collaterally his guilty plea, conviction, or sentence. It states specifically:

>10. In exchange for the concessions made by the Government in this agreement, the Defendant expressly waives the right to contest and/or appeal, **either directly or collaterally**, his/her guilty plea, conviction, sentence, and/or detention by means of **ANY** post-conviction proceeding whatsoever. **Such waiver expressly includes, and Defendant expressly agrees not to file, ANY post-conviction proceeding whatsoever. Such waiver expressly includes, and Defendant expressly agrees not to file, ANY DIRECT and/or COLLATERAL attacks on Defendant's guilty plea, conviction, sentence, and/or detention pursuant to any statue, law, procedure, or Constitutional provision whatsoever, including without limitation, Title 18, U.S.C. § 3742 and Title 28, U.S.C. § 2255.**
>
>In waiving those rights, Defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. Understanding this, Defendant agrees to waive the right to "collaterally attack" his/her conviction and/or sentence in any manner whatsoever, including Title 28, U.S.C. § 2255. Defendant is also aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed and/or the manner in which such sentence was determined. Understanding this, Defendant agrees to waive the right to appeal the sentence imposed or the manner in which it was determined **on any grounds whatsoever, including, without limitation, those set forth in Title 18, U.S.C. § 3742.**
>
>In exchange for the Agreement with the United States, Defendant waives all defenses based on venue, speedy trial under the Constitution and Speedy Trial Act, and the statute of limitations with respect to any prosecution that is not time barred on the date that this Agreement is signed, in the event that (a) Defendant's conviction is later vacated for any reason, (b) Defendant violates any provision of this Agreement, or (c) Defendant's plea is later withdrawn. [ . . . ]

[*Id.* at ¶ 10 (emphasis in original)]. The agreement was signed by Arredondo and his counsel, Jose Salvador Tellez II. [Cr. Dkt. No. 55 at 8; Cr. Dkt. No. 57 at 1].

At re-arraignment on May 17, 2007, Magistrate Judge Adriana Arce-Flores placed Arredondo under oath and advised him of the rights and implications surrounding a guilty plea. *See* Fed. R. Crim. P. 11(b)(1). [Digital Recording of May 17, 2007 Re-arraignment ("R. Rec.")

at 1:57 p.m.]. During the re-arraignment, the Assistant United States Attorney ("AUSA") reiterated that Arredondo faced a potential term of imprisonment of up to ten years. [R. Rec. at 2:00-2:01 p.m.].[3] Magistrate Judge Arce-Flores then advised Arredondo that the charge to which he was pleading guilty carried a minimum sentence of three years and asked Arredondo if he understood. Arredondo replied, "Yes, your honor." [R. Rec. at 2:01 p.m.]. Magistrate Judge Arce-Flores then admonished:

> THE COURT: There is a written plea agreement and I have given you and your attorney an opportunity to review that with the Government. Are there any corrections to the plea agreement? And have you been able to review that and sign that with your lawyer, Mr. Arredondo?
>
> ARREDONDO: Yes, I reviewed that with my lawyer.
>
> THE COURT: The plea agreement reads as follows: That in exchange for your plea of guilty to Count Two which is the bringing in count, the Government is asking that you be granted acceptance of responsibility for going forward with a timely plea of guilty, that you be sentenced at the appropriate level of the guidelines after that reduction has been taken, that they recommend an additional one level reduction in your guideline range for waiver of appeal, and that they dispose of the remaining counts from your indictment. Is that the agreement as you understood it, Mr. Tellez?
>
> TELLEZ: Yes, your Honor.
>
> THE COURT: Is that the agreement Mr. Arredondo?
>
> ARREDONDO: Yes, your Honor.
>
> THE COURT: Ms. Song, is that the agreement?
>
> SONG: Yes, your Honor, that's the agreement.
>
> THE COURT: . . . I must also advise you at this time that you have in fact given up your right to an appeal—that means you have given up your right to argue your case before a higher court in exchange for a one level further reduction in the guideline range. Do you understand that sir?

---

[3] Specifically the AUSA informed Arredondo that "the maximum penalty for bringing in undocumented aliens to the United States is a term of imprisonment of at least three years and up to ten years, a fine of not more than $250,000, and a period of supervised release of not more than three years, and a $100 special assessment on count of conviction." [R. Rec. at 2:00 p.m.].

>ARREDONDO: "Yes, your Honor."
>
>. . .
>
>THE COURT: Because you have not pled guilty, the Court will review with you at this time your rights. Right now you are presumed to be innocent. You have the right to go forward with a plea of not guilty and request a trial by jury. It is the Government that has to prove the case beyond a reasonable doubt because they are charging you with this offense. How do they prove the case? They prove the case by bringing witnesses to testify against you. With the assistance of your attorney, you have the right to cross-examine the Government's witnesses, testify on your own behalf, and you could actually bring witnesses as well, but you don't have to testify. The Court will also advise you that you have the right to have your attorney present at every stage of your case, and obviously when you get sentenced by the district court judge. Those are your rights as I have explained them, Mr. Arredondo. Do you understand them at this time?
>
>ARREDONDO: Yes, I do, your Honor.

[R. Rec. at 2:02-2:04 p.m.]. Arredondo then pled guilty, and Magistrate Judge Arce-Flores recommended that Arredondo's guilty plea be accepted by the district court. [Dkt. No. 59; R. Rec. 2:12 p.m.]. The Court accepted Arredondo's guilty plea on May 29, 2007. [Dkt. No. 60].

On September 27, 2007, Arredondo appeared before this Court for sentencing. At the sentencing hearing, Arredondo's attorney orally objected to the Pre-Sentence Investigation Report, particularly the enhancement of the base offense level under the Sentencing Guidelines for the smuggling of over 100 aliens into the United States. [Digital Recording of September 27, 2007, Sentencing Hearing ("S. Rec.") at 9:09-9:51 a.m.]. The Government responded by calling Rodolfo DeLuna, a Special Agent with Homeland Security, Office of the Inspector General, to testify as to how the Government calculated the number of aliens Arredondo smuggled into the United States. Based on this testimony and all evidence before it, the Court found by a preponderance of the evidence that more than 100 aliens were smuggled into the United States. The Court then sentenced Arredondo to a term of fifty-two months imprisonment, three years of supervised release, and a $5,000 fine—a sentence within the guideline range and well below the statutory maximum of ten years. The Court also indicated that because Arredondo had waived

his right to appeal, the judgment would become final. [Minute Entry of 9/27/2007; S. Rec. 9:09-9:51]. Judgment was entered on October 2, 2007. [Cr. Dkt. No. 72].

### B. The Current Petition

On September 24, 2008, Arredondo filed the §2255 Motion now before the Court. [Dkt. No. 1]. Arredondo asserts that he received ineffective assistance of counsel during his sentencing hearing and that his attorney should have challenged his sentence on appeal. [*Id.* at 2-3]. Based on a liberal reading of his §2255 motion, Arredondo specifically asserts that his lawyer should have objected to the enhancement of his sentence for smuggling over 100 aliens into the United States. Arredondo avers that "his plea was pursuant to an agreement with the government by which the government would drop all the other charges and recommend the sentence on a single count, in the indictment for which Petitioner pled guilty, would be the mandatory minimum of 36 months." [*Id.* at 1]. He claims that absent counsel's errors, his sentence would have only been thirty-six months, a difference of eighteen months from the sentence imposed. [*Id.* at 2].

## III. DISCUSSION

### A. Legal Standard under 28 U.S.C. § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam) (citing *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981)). Generally, § 2255 claims fall under four categories: (1) constitutional issues; (2) challenges to the district court's jurisdiction to impose the sentence; (3) challenges to the length of a sentence in excess of the statutory maximum; and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir.

1995) (citations omitted). After conducting an initial examination of the petition, the Court must dismiss it if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." 28 U.S.C. § 2255, Proc. R. 4(b).

### B. Waiver of Right to Appeal and Collateral Attack

Arredondo has alleged ineffective assistance of counsel, a wrong of constitutional proportion, which is proper in a motion under 28 U.S.C. § 2255. The Court, however, must first determine whether Arredondo's claim is foreclosed by his waiver of his right to collaterally attack his conviction and sentence because "an ineffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly affected the validity of the waiver of the plea itself." *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002).

A defendant may waive his right to appeal and collaterally attack a conviction and sentence by means of a plea agreement, so long as the waiver is both knowing and voluntary.[4] *See, e.g.*, *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005) (holding that a "knowing and voluntary" standard applies to a waiver of appeal); *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005) ("We apply normal principles of contract interpretation when construing plea agreements."); *White*, 307 F.3d at 343. A district court must first determine whether the waiver was voluntary and knowing, and then evaluate whether the waiver "applies to the circumstances at hand, based upon the plain language of the agreement." *Bond*, 414 F.3d at 544 (citing *McKinney*, 406 F.3d at 746-47); *see also United States v. Ruiz*, 536 U.S. 622, 629 (2002). A defendant knowingly enters a waiver when "the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances-even though the defendant may not know the *specific detailed* consequences of invoking it." *Ruiz*, 536 U.S. at 630 (emphasis in original).

---

[4] The terms "knowing" and "informed" are essentially two ways to express the same thought. *See United States v. Bushert*, 997 F.2d 1343, 1350 n.16 (11th Cir. 1993).

A careful review of the record reveals no evidence that Arredondo's waiver of his right to collaterally attack his conviction under §2255 was unknowing or involuntary. First, by signing the plea agreement, Defendant acknowledged that he had reviewed it with counsel and understood its terms, including the provision in paragraph ten that he would not appeal or collaterally attack his conviction. [Cr. Dkt. No. 55 at 8; Cr. Dkt. No. 57 at 1]. He also acknowledged that he had entered into the agreement voluntarily and knowingly. [Cr. Dkt. No. 55 at ¶ 17]. The Court also discussed with Arredondo the plea agreement and its terms at a Rule 11 hearing. While the Court did not specifically inform Arredondo that he could not collaterally attack his conviction, as it should have done under Rule 11(b)(1)(N),[5] the Court did ask Arredondo if he understood that under the plea agreement he could not appeal his conviction. Specifically, the Court asked:

> THE COURT: "I must also advise you at this time that you have in fact given up your right to an appeal—that means you have given up your right to argue your case before a higher court in exchange for a one level further reduction in the guideline range. Do you understand that sir?"
>
> ARREDONDO: "Yes, your honor."

[R. Rec. at 2:03 p.m.]. The Court also asked Arredondo if he had reviewed his plea agreement with his lawyer and if he understood the charge and the possible penalty in the case. [R. Rec. at 2:02 p.m.]. The Court further admonished Arredondo that any sentencing recommendation was not binding on the Court. Arredondo responded, "Yes." [R. Rec. at 2:01-02 p.m.]. Indeed, Arredondo never expressed doubt or confusion as to the ramifications of his waiver.

When a petitioner does not allege, and the record contains no indication that ratification of the plea agreement was involuntary or unknowing, the Court will hold the defendant to the

---

[5] Rule 11(b)(1) states, "Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1).

bargain that he made—the Court need not presume that the waiver was ineffective. *See White*, 307 F.3d at 343; *Bond*, 414 F.3d at 544 (citing *McKinney*, 406 F.3d at 746); *United States v. Portillo*, 18 F.3d 290, 292-93 (5th Cir. 1994) (stating that a plea agreement will be upheld where the record clearly demonstrates defendant read and understood agreement and he raised no questions regarding any waiver-of-appeal issue). Therefore, based upon the plain waiver language of Arredondo's plea agreement, the Court concludes that Arredondo knowingly and voluntarily waived his right to appeal and to collaterally attack his sentence and conviction. *See Bond*, 414 F.3d at 544; *see also United States v. Wilkes*, 20 F.3d 651, 653-54 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of §2255 rights). The Court next concludes that the terms of Arredondo's plea agreement extend to the current petition. *See id.* Arredondo agreed not to file a petition pursuant to 28 U.S.C. § 2255. However, even if Arredondo had not validly waived his rights, he would not have prevailed on the merits of his ineffective assistance of counsel claim. The Court will now address this claim to explain why Arredondo would not prevail.

### C. Ineffective Assistance of Counsel Claim

Arredondo claims that he received ineffective assistance of counsel during sentencing and that his attorney should have challenged his sentence on appeal. [Dkt. No. 1 at 2]. Specifically, Arredondo points to the enhancement of his sentence by nine levels for smuggling over 100 aliens into the United States. [*Id.*].

In order to merit post-conviction relief due to ineffective assistance of counsel, Arredondo must demonstrate that (1) counsel's performance was deficient and (2) that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir.), *cert. denied*, 513 U.S. 960 (1994) (summarizing the *Strickland* standard of review). A failure to establish either prong of the *Strickland* test

requires a finding that counsel's performance was constitutionally effective. *See id.*; *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) (finding that "[f]ailure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim . . . ."). Thus, a court does not have to analyze both components of a claim of ineffective assistance of counsel if the movant has made an insufficient showing as to one prong. *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000).

Under the "performance" prong, counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In assessing whether counsel's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The court is not to analyze counsel's actions in hindsight but rather to judge his or her decisions in a "highly deferential" manner. *Motley*, 18 F.3d at 1226.

Under the "prejudice" requirement, Arredondo must show a reasonable probability that, but for counsel's errors, the proceeding's result would have been different. *Id.* at 689. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "However, the mere possibility of a different outcome is not sufficient to prevail on the prejudice prong. Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Crane v. Johnson*, 178 F.3d 309, 312-313 (5th Cir. 1999) (citing *Ransom v. Johnson,* 126 F.3d 716, 721 (5th Cir.), *cert. denied*, 522 U.S. 944 (1997)).

Arredondo's allegation insinuating that his attorney Jose Salvador Tellez II did not object to the enhancement of his sentence for smuggling into the United States more than 100 unlawful illegal aliens under U.S.S.G. § 2L1.1(b)(2) (2007) is without merit. While Arredondo's counsel

did not file written objections to the Pre-Sentence Investigation Report, he did object orally at the beginning of the sentencing hearing to the enhancement. [S. Rec. at 9:11 a.m.]. The Court then proceeded to entertain argument on this point from counsel for forty minutes. The Government presented Special Agent Rodolfo DeLuna as a witness. Arredondo's counsel questioned Agent DeLuna on how he had determined that Arredondo had smuggled more than 100 aliens into the United States and on what dates Arredondo had smuggled these aliens into the United States. [S. Rec. at 9:09-9:51 a.m.]. After hearing counsels' arguments and based on the evidence presented, the Court found by a preponderance of the evidence that Arredondo had smuggled more than 100 immigrants into the United States. [*Id.*]

Because his attorney did object to the enhancement of his base offense level and made other arguments at the sentencing hearing, Arredondo did not meet his burden of showing that his attorney's performance was deficient. Additionally, Arredondo cannot show prejudice, as the Court, in the face of counsel's argument found by a preponderance of the evidence that Arredondo smuggled more than 100 immigrants into the United States and, thus, increased his sentencing guideline range accordingly.[6] Because Arredondo's sentence fell within a properly calculated guideline range, it is presumptively reasonable. *See United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006; *United States v. Neal*, 176 Fed. Appx. 542, 542-43 (5th Cir.), *cert. denied*, 127 S.Ct. 121 (2006).

Finally, the Court notes that Arredondo's Motion to Vacate essentially represents an attempt to challenge the Court's application of the Sentencing Guidelines. In his petition, Arredondo avers that "his sentence was imposed in error in the calculations of the Sentencing Guidelines." [Dkt. No. 1 at 2]. A claim based on the misapplication or miscalculation of the

---

[6] Indeed, under section 2L1.1(b)(2) of the U.S. Sentencing Guidelines, a Court should increase the offense level of a defendant by three to nine levels when the "offense involved the smuggling, transporting or harboring of six or more unlawful aliens." U.S.S.G. § 2L1.1(b)(2) (2007). If the offense involved more than 100 unlawful aliens, the offense level is to be increased by nine levels. *Id.*

Sentencing Guidelines is not a constitutional claim under §2255.  *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (citations omitted) (explaining misapplications of the Sentencing Guidelines are not cognizable in §2255 motions); *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994) (holding "a district court's technical application of the Sentencing Guidelines does not give rise to a constitutional issue cognizable under section 2255").

**CONCLUSION**

For the foregoing reasons, Petitioner's Motion to Vacate, Set Aside, or Amend Judgment is **DISMISSED with prejudice**. Any future request for a certificate of appealability is **DENIED**.

IT IS SO ORDERED.

DONE this 23rd day of October, 2008, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE